IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>v.<br><br>GARY DALE ELLIOTT SR.,<br><br>     Defendant. | **No. 4:21-cr-00038-RGE-HCA**<br><br>**ORDER DENYING DEFENDANT'S<br>MOTION TO SUPPRESS** |

## I.    INTRODUCTION

Defendant Gary Dale Elliott Sr.'s girlfriend and his ex-girlfriend separately reported to law enforcement that Elliott possessed images of child pornography on electronic storage devices. The night after making the reports, the women called 911 alleging Elliott was armed and they were scared for their safety. Law enforcement officers responded. They detained Elliott, spoke with him, and searched his car, locating marijuana paraphernalia and a loaded handgun. Later, law enforcement officers obtained a search warrant for electronic storage devices turned over by Elliott's girlfriend. They located images of child pornography on the electronic storage devices. Officers then obtained a search warrant for Elliott's residence, where they located guns and more electronic storage devices with images of child pornography.

Elliott moves to suppress all physical evidence, statements, and observations obtained from his interactions with law enforcement officers. He also moves to suppress evidence obtained from the searches of the electronic storage devices and his residence. For the reasons set forth below, the Court denies Elliott's motion.

## II.    FACTUAL FINDINGS

In support of his motion to suppress Elliott submits Exhibit A (audio from a 911 call),

Exhibit B (Des Moines Police Officer Kyle Gruver's body camera footage), Exhibit C (Des Moines Police Officer Ryan Neumann's patrol car dash camera footage), Exhibit D (Des Moines Police Officer Nicholas Valentine's body camera footage), Exhibit E (Officer Neumann's body camera footage), Exhibit F (search warrant for electronic storage devices), and Exhibit G (search warrant for Elliott's residence). Def.'s Exs. A–G Supp. Mot. Suppress, ECF Nos. 64-1 to 64-7. The Government submits Exhibits 1 (Des Moines Police Officer Randy Grayson's investigation report), Exhibit 2 (Des Moines Police Officer Connor Allen's investigation report), Exhibit 3 (Officer Gruver's investigation report), Exhibit 4 (evidence control and receipt form), and Exhibit 5 (Iowa Division of Criminal Investigation Cyber Crime Unit investigative communique). Gov't's Exs. 1–5 Supp. Resist. Def.'s Mot. Suppress, ECF Nos. 67-1 to 67-5. The Court admits the parties' exhibits without objection and considers them for purposes of resolving this motion. Neither party requests a hearing. ECF No. 67; ECF No. 63. Because the parties' briefing and unobjected-to exhibits adequately present the issues, no hearing is required. *See United States v. Losing*, 539 F.2d 1174, 1177 (8th Cir. 1976).

The Court finds the following facts by a preponderance of the evidence for the purpose of considering Elliott's motion to suppress. *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974); *accord United States v. Sanders*, 341 F.3d 809, 818 (8th Cir. 2003).

On February 3, 2021, Officer Grayson met with Michelle Anderson. ECF No. 67-1 at 2. Anderson reported Elliott had sexually assaulted her on April 9, 2020. *Id.* She also showed Officer Grayson threatening text messages Elliott sent her in January 2021. *Id.* at 3. Anderson also reported her friend, Kiley Hannan—Elliott's current girlfriend—had found several electronic storage devices containing images of child pornography in Elliott's house. *Id.* Anderson claimed Hannan brought the electronic storage devices to Anderson's home, where she viewed them and observed images of nude children. *Id.* Anderson reported there were other electronic storage devices in

Elliott's house, and that Elliott took these devices to work with him. *Id.* Anderson stated she was "afraid" of Elliott and requested a no-contact order. *Id.*

In the afternoon of February 4, 2021, Hannan met with Officer Allen to report alleged sexual abuse. ECF No. 67-2 at 2. Instead, Hannan reported Elliott possessed USB drives containing child pornography. *Id.* at 3. She reported she often saw USB drives on the bathroom counter at Elliott's residence. *Id.* She also reported observing child pornography on Elliott's "phone, tablet, and computer numerous times." *Id.* Hannan reported finding a bag of electronic storage devices at Elliott's residence in January 2021. *Id.* Hannan observed "hundreds, if not thousands, of child pornography pictures" on some of the devices. *Id.* Hannan indicated most of the photographs were of minors under the age of ten. *Id.* Hannan specified some of the images were of Elliott's ex-girlfriend's children, who she identified by name. *Id.* She reported the images of the ex-girlfriend's children showed the minors "going to the bathroom, sleeping, [and] showering." *Id.* Hannan gave the bag containing fourteen USB devices and five "SD computer data storage devices" to Officer Allen. *Id.* at 6.

At 11:24 p.m., on February 4, 2021, Anderson called the Des Moines Police Department's emergency line to report Elliott was armed with a gun. ECF No. 64-1 at 0:01–18, 0:35–38; *see also* ECF No. 67-3 at 1–2. Anderson reported she and Hannan were parked by an apartment building and Elliott was nearby in his car. ECF No. 64-1 at 0:50–05, 3:40–42. Anderson picked Hannan up because Elliott parked outside and had threatened to kill them. *Id.* at 0:20–33. Anderson believed Elliott was there because of their reports to law enforcement. *See id.* She also believed Elliott had a gun because he told Hannan he would kill her, had held a gun to her head, and had threatened Anderson. *Id.* at 0:37–39, 2:38–47; 5:41–43. Anderson explained she did not want law enforcement officers to come to her. *Id.* at 1:08–12. She requested law enforcement officers "ask [Elliott] what he is doing" or "ask [Elliott] to leave" because he had a gun and "is threatening."

3

*Id.* at 1:18–28, 2:04–06, 2:42–47. Anderson and Hannan provided the address of the apartment building as well as identifying information about Elliott, including his birthday, the color and make of his car—a red Dodge Avenger—and particulars about his location. *Id.* at 1:30–35, 1:50–57, 2:51–3:09. Anderson and Hannan indicated they would meet with law enforcement officers, but not where Elliott could see them. *Id.* at 3:24–31. Anderson remained on the line with the 911 dispatcher and provided information about Elliott's location until law enforcement officers arrived at the scene. *See id.* at 5:01–11:22.

Officers Gruver, Neumann, and Valentine responded to the emergency call. ECF No. 67-3 at 5; Def.'s Br. Supp. Mot. Suppress 3, ECF No. 63-1. Officer Gruver approached the red Avenger, requested Elliott step out, and handcuffed Elliott. ECF No. 64-3 at 0:57–1:22. Officer Gruver then explained to Elliott he was being detained because "somebody sa[id he] ha[s] a gun." *Id.* at 1:30–33. Officer Gruver asked Elliott if he had a gun, and Elliott said he did not. *Id.* at 1:33–34. Officer Valentine asked if he could pat down Elliott for weapons; Elliott consented. *See id.* at 1:35–37; ECF No. 64-4 at 1:35–37. As Officer Valentine patted down Elliott, Officer Neumann asked if Elliott had "a permit to carry or anything," and Elliott responded, "no." ECF No. 64-2 at 1:40–42. Officer Neumann also asked if Elliott had any "weapons in th[e] vehicle," and Elliott responded "no." *Id.* at 1:42–44. When the officers inquired about why Elliott was at the apartment complex, he indicated his "ex-girlfriend [wa]s mad." *Id.* at 1:45–50.

Officer Gruver led Elliott away from his vehicle and asked him about the events that transpired that night. *See id.* at 2:35–42. Elliott explained his girlfriend was mad and he came to the apartment complex to see if she would talk to him. *See id.* at 2:43–3:05. Officer Gruver also asked Elliott for his personal information and Elliott provided it. *Id.* at 3:16–25. At this point, Officer Valentine asked Elliott if there were any "drugs, guns, knives, or bombs" in his

4

car. ECF No. 64-4 at 3:24–28. Elliott responded "no." *Id.* at 3:26. Then Officer Valentine asked Elliott, "Are you okay if I just go ahead and take a quick look, make sure everything is kosher in there." *Id.* at 3:29–32. Elliott responded, "Yeah, I mean . . . I might have a pot pipe in there or something." *Id.* at 3:33–35. Officer Valentine searched Elliott's car and found a loaded handgun and a marijuana pipe. *Id.* at 4:00–6:09; ECF No. 67-3 at 5.

On February 5, 2021, Des Moines Police Detective Steven Bjurstrom applied for and obtained a search warrant for the electronic storage devices Hannan provided. ECF No. 64-6. On "a silver 'AGFAPHOTO 16GB' USB storage device," Detective Bjurstrom identified "multiple images of child erotica and images of nude children and children with their genitals exposed." ECF No. 67-5 at 4. Upon examining other electronic storage devices, law enforcement officers identified sexually explicit images of "prepubescent female[s]." *Id.* at 5–8.

After searching the electronic storage devices, Detective Bjurstrom applied for and obtained a search warrant for Elliott's residence. ECF No. 64-7. Law enforcement officers found various electronic devices, including computers, USB drives, and other electronic storage devices in Elliott's residence. ECF No. 67-5 at 4. Officers also located boxes of live ammunition and a single shot bolt action rifle in Elliott's bedroom. ECF No. 67-3 at 9; *see also* ECF No. 67-4.

A grand jury in the Southern District of Iowa returned a superseding indictment charging Elliott with three counts of production of child pornography, in violation of 18 U.S.C. § 2251(a), (e) (Count 1, Count 2, and Count 3); one count of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), (b)(1) (Count 4); two counts of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2) (Count 5 and Count 6); and possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (Count 7). Redacted Superseding Indictment, ECF No. 30.

Additional factual findings are set forth below as needed.

## III.   LEGAL STANDARD

### A.   Fifth Amendment

The Fifth Amendment to the United States Constitution provides: "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "[T]he prosecution may not use statements . . . stemming from custodial interrogation of the defendant unless it" has warned the defendant "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A suspect is in custody when "there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)).

Persons subject to brief investigative detentions, known as *Terry* stops, are not in custody for *Miranda* purposes. *United States v. Pelayo-Ruelas*, 345 F.3d 589, 592 (8th Cir. 2003) (citing *Berkemer v. McCarty*, 468 U.S. 420, 439–40 (1984)); *United States v. McGauley*, 786 F.2d 888, 890 (8th Cir. 1986) ("No *Miranda* warning is necessary for persons detained for a *Terry* stop.").

### B.   Fourth Amendment

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "[S]ubject only to a few specifically established and well delineated exceptions," searches and seizures "without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

6

Among those exceptions is the automobile exception, which permits a warrantless search of an automobile when there is probable cause to believe it contains evidence of criminal activity. *Carroll v. United States*, 267 U.S. 132, 158–59 (1925); *accord United States v. Davis*, 569 F.3d 813, 817–18 (8th Cir. 2009). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Murillo-Salgado*, 854 F.3d 407, 418 (8th Cir. 2017) (internal quotation marks and citation omitted).

Additionally, a police officer may briefly detain a person when there is reasonable suspicion the person is engaging in criminal activity. *Pelayo-Ruelas*, 345 F.3d at 591–92 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). "Reasonable suspicion exists when an 'officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *United States v. Givens*, 763 F.3d 987, 989 (8th Cir. 2014) (internal quotation marks and citation omitted).

### C.      Challenging a Search Warrant Under *Franks*

A defendant challenging an affidavit supporting a search warrant must make two showings to obtain an evidentiary hearing. *Franks v. Delaware*, 438 U.S. 154, 171–72 (1978); *accord United States v. Shockley*, 816 F.3d 1058, 1061 (8th Cir. 2016). First, the defendant is required make a "substantial preliminary showing that the affiant intentionally or recklessly included a false statement" or omitted a truthful statement in the warrant affidavit. *Shockley*, 816 F.3d at 1061 (internal quotation marks and citation omitted). Second, the defendant must show "the false statement [or omitted information] was necessary to the finding of probable cause." *Id.*

An attack on an affidavit supporting a search warrant cannot be merely conclusory. *Franks*, 438 U.S. at 171. The defendant must allege deliberate falsehood or reckless disregard for the truth and support such allegations with an offer of proof. *Id.* The test to determine if an affiant

deliberately or recklessly made false statements, or omitted truthful statements, "is whether, after viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *United States v. McIntyre*, 646 F.3d 1107, 1114 (8th Cir. 2011) (internal quotation marks and citation omitted). In addition to this substantial showing, a defendant must establish the affidavit would be insufficient to support probable cause for the search if false statements were excluded and omitted statements were included. *Franks*, 438 U.S. at 171–72. The defendant is entitled to a *Franks* hearing if the affidavit's remaining content is insufficient to establish probable cause. *Id.*

## IV.    DISCUSSION

Elliott moves to suppress statements and evidence obtained on February 4, 2021. ECF No. 63 ¶ 3; ECF No. 63-1 at 8–16. Elliott also moves to suppress evidence obtained from the searches of the electronic storage devices and his residence. ECF No. 63-1 at 16–24. Elliott argues the affidavits supporting the search warrants are insufficient and thus he is entitled to a *Franks* hearing. *See id.* at 19–24. The Government resists, arguing law enforcement officers lawfully obtained statements from Elliott and lawfully searched Elliott's car on February 4, 2021. ECF No. 67 at 9–12. In addition, the Government argues probable cause supports the search warrants and therefore the search of Elliott's electronic storage devices and his residence were lawful. *Id.* at 14–17. Finally, the Government argues a *Franks* hearing is not warranted. *Id.* at 17–18.

The Court addresses Elliott's arguments as to evidence obtained on February 4, 2021. Next, the Court addresses Elliott's arguments as to the search warrants and his request for a *Franks* hearing. [1]

---

[1] The chronology of events indicates law enforcement officers had information about Elliott relating to images of child pornography prior to law enforcement officers' interactions with Elliott on the night of February 4, 2021. *See* ECF No. 67 at 14 n.4.

A.      **February 4, 2021**

Elliott argues all statements and evidence obtained from his interactions with law enforcement officers interactions on the night of February 4, 2021, should be suppressed because law enforcement officers seized him without probable cause and subjected him to custodial interrogation without *Miranda* warnings. ECF No. 63-1 at 8–16. Elliott also argues law enforcement officers improperly searched his car. *Id.* at 15–16. The Government resists, arguing law enforcement officers had reasonable suspicion to detain Elliott and lawfully searched his car after he spontaneously disclosed the presence of drug paraphernalia. ECF No. 67 at 9–12.

Because Elliott was subject to a valid *Terry* stop, he was not unlawfully seized. Additionally, Elliott was not interrogated, so *Miranda* warnings were not required. Finally, Elliott provided consent to search his car and his voluntary statements provided additional probable cause. As such, the Court denies Elliott's motion to suppress statements and evidence from February 4, 2021.

1.      *Terry* **stop**

Under *Terry v. Ohio*, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry*, 392 U.S. at 30); *accord El-Ghazzawy v. Berthiaume*, 636 F.3d 452, 456–57 (8th Cir. 2011). "Reasonable suspicion is a lower threshold than probable cause." *United States v. Carpenter*, 462 F.3d 981, 986 (8th Cir. 2006) (internal quotation marks and citation omitted). "A *Terry* stop that is supported by a reasonable suspicion at the outset may nonetheless violate the Fourth Amendment if it is excessively intrusive in its scope or manner of execution." *El-Ghazzawy*, 636 F.3d at 457 (internal quotation marks and citation omitted). Here, Elliott was placed in handcuffs when law enforcement officers encountered him at his vehicle. Thus, the Court must determine whether law enforcement

officers had reasonable suspicion that criminal activity was afoot to justify a *Terry* stop of Elliott. *Cf. Wardlow*, 528 U.S. at 123.

"Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." *United States v. Garcia*, 23 F.3d 1331, 1334 (8th Cir. 1994). A *Terry* stop may be based on information from a tipster. *See Navarette v. California*, 572 U.S. 393, 397 (2014). "When evaluating tips, reasonable suspicion 'is dependent upon both the content of the information possessed by the police and its degree of reliability.'" *United States v. Mosley*, 878 F.3d 246, 252–53 (8th Cir. 2017) (quoting *Navarette*, 572 U.S. at 397). "An anonymous tip alone seldom demonstrates [an] informant's basis of knowledge or veracity." *Navarette*, 572 U.S. at 397. However, a tip from "a known informant whose reputation can be assessed and who can be held responsible if [the] allegations turn out to be fabricated" is more reliable. *Florida v. J.L.*, 529 U.S. 266, 270 (2000) (citing *Adams v. Williams*, 407 U.S. 143, 146–47 (1972)); *accord United States v. Kent*, 531 F.3d 642, 648–49 (8th Cir. 2008).

A totality of the circumstances supports finding law enforcement officers had reasonable suspicion to conduct a *Terry* stop. *Cf. Garcia*, 23 F.3d at 1334. In her 911 call, Anderson provided information that Elliott was a felon, possessed a gun, was nearby, and had threatened to kill her and Hannan. ECF No. 64-1 at 0:29–33, 1:29–31, 2:43–45, 2:46–48, 5:41–43, 6:01–05. Anderson's 911 call regarding Elliott "bore adequate indicia of reliability" for law enforcement officers to credit her allegations. *Cf. Navarette*, 572 U.S. at 398–99. Anderson was not an anonymous tipster. *Cf. J.L.*, 529 U.S. at 270. She identified herself and indicated her willingness to speak with law enforcement officers, and provided information about Elliott that suggested her familiarity with him. *See, e.g.*, ECF No. 64-1 at 0:03–18, 1:27–35, 1:48–55, 2:05–15, 3:24–29, 10:58–11:06; *cf. J.L.*, 529 U.S. at 270; *Navarette*, 572 U.S. at 398. Anderson's use of the 911 emergency system

is indicative of her veracity. The 911 system "provide[s] some safeguards against making false reports with immunity," including "identifying and tracing callers." *Navarette*, 572 U.S. at 400. Thus, Anderson could be held accountable for providing law enforcement officers with false information. *Cf. id.*; *J.L.*, 529 U.S. at 270. Hannan can also be heard during the 911 call confirming Anderson's allegations, voicing concern for their safety, and providing law enforcement officers with additional indicia of reliability. ECF No. 64-1 at 1:48–1:53, 2:40–44. Finally, Anderson remained on the phone with the dispatcher, providing contemporaneous information about Elliott while law enforcement officers arrived at the scene. ECF No. 64-1 at 8:47–9:20, 9:56–10:03, 10:13–24; *cf. Mosley*, 878 F.3d at 253.

Because law enforcement officers independently verified some information Anderson provided, they were justified in relying on her statements regarding the firearm. *Cf. Mosley*, 878 F.3d at 252–53; *Kent*, 531 F.3d at 649 (finding law enforcement officers' verification of some of tipster's information sufficient to establish reliability); *Irving v. Richardson*, No. 19-2364, 2021 WL 5933049, at *1–3 (8th Cir. Dec. 16, 2021) (finding law enforcement officers had reasonable suspicion to detain the defendant when the defendant's clothing and location matched a description by a 911 caller reporting "a disturbance with a weapon"). Elliott was parked in the location and car Anderson described. ECF No. 64-1 at 1:31–32. In addition, Elliott confirmed he was at the location because of a dispute with a girlfriend. Anderson's statements about Elliott's possession of a gun and his status as a felon indicated criminal activity may be afoot, which provided law enforcement officers with reasonable suspicion to conduct a *Terry* stop. *Cf. United States v. Morgan*, 729 F.3d 1086, 1089 (8th Cir. 2013).

Law enforcement officers did not exceed the bounds of a valid *Terry* stop in their interactions with Elliott. *Cf. El-Ghazzawy*, 636 F.3d at 457. "[O]fficers may reasonably handcuff a suspect . . . during the course of a *Terry* stop in order to protect their safety and maintain

11

the status quo." *United States v. Smith*, 645 F.3d 998, 1002 (8th Cir. 2011). Reasonableness of law enforcement officers' actions is based on "whether the officer had an objectively reasonable concern for officer safety or suspicion of danger." *Id.* at 1002–03. Here, law enforcement officers responded to a late-night report of an armed suspect who had allegedly threatened to kill two people and held a gun to someone's head. ECF No. 64-1 at 0:29–32, 2:46–48, 5:41–43, 6:01–05. Under these circumstances, law enforcement officers had an objectively reasonable concern for their safety based on the danger posed by a firearm in Elliott's car. *Cf. Smith*, 645 F.3d at 1002–03. As such, law enforcement officers did not unlawfully exceed the bounds of *Terry* when they placed Elliott in handcuffs. *See Morgan*, 729 F.3d at 1091 ("[O]fficers reasonably may handcuff a suspect during the course of a *Terry* stop to protect their personal safety."); *cf. El-Ghazzawy*, 636 F.3d at 457.

Because law enforcement officer had a reasonable suspicion based on articulable facts that criminal activity may be afoot, they were justified in conducting a *Terry* stop of Elliott. In addition, law enforcement officers did not exceed the bounds of *Terry* when they placed Elliott in handcuffs based on the reasonable concern for their safety. Because Elliott was not subject to an unconstitutional seizure, he is not entitled to the suppression of evidence on this ground.

### 2. Custodial interrogation

"[N]ot all statements made while in custody are products of interrogation."[2] *United States v. Hatten*, 68 F.3d 257, 262 (8th Cir. 1995). "A question is an interrogation if it is reasonably likely to elicit incriminating information." *United States v. Cowan*, 674 F.3d 947, 958 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Pennsylvania v. Muniz*, 496 U.S. 582, 600–01 (1990)).

---

[2] For purposes of Elliott's argument about custodial interrogation, the Government "assumes . . . Elliott was in custody for *Miranda* purposes after he was removed from the car, placed in handcuffs, and patted down." ECF No. 67 at 12–13. As such, the Court does not address whether Elliott was in custody under *Miranda*.

Interrogation does not include "request[s] for routine information necessary for basic identification purposes." *United States v. Brown*, 101 F.3d 1272, 1274 (8th Cir. 1996) (internal quotation marks and citation omitted). "Consenting or refusing to consent to a search is not subject to suppression under *Miranda*." *United States v. Tapia-Rodriguez*, 968 F.3d 891, 895 (8th Cir. 2020). Additionally, *Miranda* warnings are not required when "'police officers ask questions reasonably prompted by a concern for . . . public safety,' even when the potential threat is to the officers themselves." *United States v. Becerra*, 958 F.3d 725, 730 (8th Cir. 2020) (omission in original)(quoting *New York v. Quarles*, 467 U.S. 649, 656 (1984)). And "[v]olunteered statements of any kind are not barred by the Fifth Amendment." *Miranda*, 384 U.S. at 478. "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

Law enforcement officers' questions to Elliott after he was placed in handcuffs did not amount to interrogation. *Cf. Miranda*, 384 U.S. at 444. At the beginning of law enforcement officers' interactions with Elliott, Officer Gruver asked Elliott numerous questions about his identity and why he was at the apartment complex. *See, e.g.*, ECF No. 64-2 at 3:16–3:25. These questions seeking routine identifying information were not interrogation. *Cf. Cowan*, 674 F.3d at 958 (finding a law enforcement officer's questions to the defendant about how he arrived at an apartment complex was a request for routine identifying information). As such, law enforcement officers were not required to provide Elliott with a *Miranda* warning. *Cf. Miranda*, 384 U.S. at 444. Law enforcement officers also asked Elliott if he had a gun in his car. ECF No. 64-2 at 1:42–44; ECF No. 64-4 at 3:24–28. This line of questioning is protected by the public safety exception. *Cf. Becerra*, 958 F.3d at 730 (finding law enforcement officers' questions to the defendant about weapons on his person was not interrogation because it fell under

13

the public safety exception). Officers were responding to an emergency call involving an alleged armed suspect who had threatened two people. It was late at night. Officers were justifiably concerned about the danger posed by an alleged firearm in Elliott's car. As such, a *Miranda* warning was not required to question Elliott about the presence of a firearm. *Cf. id.*

Officer Valentine's request to search Elliott's car does not fall under the purview of *Miranda*. ECF No. 64-4 at 3:29–32; *cf. Tapia-Rodriguez*, 968 F.3d at 895. Elliott's affirmative response indicates his consent to Officer Valentine's search request. ECF No. 64-4 at 3:33–35. Additionally, Elliott responded to the request for consent to search with the spontaneous admission about the presence of a marijuana pipe in his car. *See id.* This information—which was spontaneously given and non-responsive to the question posed—is a voluntary statement. *Cf. Miranda*, 384 U.S. at 478. At that point, law enforcement officers had moved on from questioning Elliott about the presence of weapons and he had consented to a search of his car. Video evidence indicates law enforcement officers and Elliott engaged in a calm exchange lasting approximately five minutes from the moment Elliott was handcuffed until he volunteered information about the marijuana pipe in his car. *See generally* ECF No. 64-2; ECF No. 64-4. The record provides no indication of coercive police activity to suggest Elliott's statement was not voluntary. *Cf. Connell*, 479 U.S. at 167.

Because law enforcement officers did not interrogate Elliott, they were not required to provide him with *Miranda* warnings. Additionally, statements Elliott made concerning a marijuana pipe were voluntary and did not require a *Miranda* warning. Because Elliott was not subject to custodial interrogation, he is not entitled to the suppression of statements he made to law enforcement officers on this ground.

### 3.    Car search

Searches voluntarily consented to do not offend the Fourth Amendment's prohibition on

unreasonable searches. *United States v. Zamoran-Coronel*, 231 F.3d 466, 468 (8th Cir. 2000) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)). Police may conduct a warrantless search with an individual's consent "provided the consent is voluntary." *United States v. Mendoza*, 677 F.3d 822, 829 (8th Cir. 2012).

Law enforcement officers did not violate Elliott's Fourth Amendment rights when they searched his car. Elliott provided law enforcement officers with consent to search his vehicle. *See supra* Part III.A.2; *Zamoran-Coronel*, 231 F.3d at 468; *Mendoza*, 677 F.3d at 829. In addition, the automobile exception supports law enforcement officers' warrantless search of Elliott's car. *Cf. Soderman*, 983 F.3d at 374–75. By spontaneously stating there may be a marijuana pipe in his car, Elliott provided officers with information giving rise to a fair probability that evidence of a crime would be found in his car. *Cf. Rodriguez*, 711 F.3d at 935–36 (affirming probable cause existed to support a warrantless car search when the defendant indicated a handgun and a methamphetamine pipe were located in the car). As such, law enforcement officers had probable cause to search Elliott's car. *Cf. id.* To the extent Elliott argues the car search is fruit of an illegal seizure, this argument also fails as addressed above. *See supra* Part IV.A.1.

Because Elliott consented to the search and officers had probable cause to search his car, law enforcement officers did not violate Elliott's Fourth Amendment rights. As such, evidence located in Elliott's car, including the marijuana pipe and the gun, are admissible.

### B.    Search Warrants

Elliott argues the search warrants for the electronic storage drives and his residence lacked probable cause. ECF No. 63-1 at 16–19. He also argues he is entitled to a *Franks* hearing because the affidavits supporting the search warrants lacked information about Anderson's and Hannan's criminal histories or Hannan's pending criminal charges for theft and fraud. *Id.* at 19–24. As to the search warrants, the Government resists, arguing probable cause supported both search warrants.

ECF No. 67 at 14–17. As to the *Franks* hearing, the Government also resists, arguing Elliott fails to meet the requirements under *Franks* to warrant a hearing. *Id.* at 17–21.[3]

The Court addresses whether probable cause supports the search warrants. Then the Court addresses whether Elliott is entitled to a *Franks* hearing. Finding probable cause supports the warrants and Elliott is not entitled to a *Franks* hearing, the Court denies Elliott's motion to suppress evidence obtained from the searches of the electronic storage devices and his residence.

### 1.    Probable cause

Elliott argues law enforcement officers failed to corroborate information supporting the search warrant for the electronic storage devices. ECF No. 63-1 at 18–19. He contends the search warrant for his residence relied on illegally obtained information from the search and seizure on February 4, 2021. *Id.* at 20. He argues such information "must be excised when evaluating the sufficiency of the probable cause for the warrant for [his] residence." *Id.*

A search warrant must be based on probable cause. *See United States v. Seidel*, 677 F.3d 334, 337 (8th Cir. 2012). "Probable cause exists if the warrant application and affidavit describe circumstances showing a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Montes-Medina*, 570 F.3d 1052, 1059 (8th Cir. 2009) (internal quotation marks and citation omitted). "To determine whether probable cause exists . . . [the court] look[s] to the totality of the circumstances." *United States v. Reinholz*, 245 F.3d 765, 776 (8th Cir. 2001) (internal quotation marks and citation omitted). Probable cause is assessed "from the viewpoint of a reasonably prudent police officer acting in the circumstances of the particular case." *Seidel*, 677 F.3d at 337. Additionally, the Court gives "great deference"

---

[3] The Government also argues if the Court finds there is no probable cause to support the search warrants, the *Leon* good faith exception applies. ECF No. 67 at 20–21. Because the Court finds probable cause supports the search warrants, the Court does not address the Government's good faith argument.

to the issuing judge's determination as to probable cause supporting a search warrant. *Gates*, 462 U.S. at 28 (internal quotation marks and citation omitted).

a.    Electronic storage devices

Probable cause supports the search warrant for the electronic storage devices Hannan provided. *Cf. Seidel*, 677 F.3d at 337. In the affidavit supporting the warrant application for the electronic storage devices, Detective Bjurstrom relied on Anderson's and Hannan's police reports. ECF No. 64-6 at 4–6; *see also* ECF No. 67-1 at 2, 5; ECF No. 67-2 at 2–3. The affidavit provided probable cause to believe the electronic storage devices contained evidence of a crime, specifically sexually explicit images of children. *Cf. United States v. Stephen*, 984 F.3d 625, 631 (8th Cir. 2021) (finding probable cause supported a search warrant for a USB storage device where the defendant's roommate turned over the device and reported he observed child pornography images on the device). Anderson and Hannah provided independent reports to law enforcement officers about the images they each observed on the electronic storage devices. Anderson reported the information to Officer Grayson on February 3, 2021, and Hannan corroborated Anderson's information on February 4, 2021, when she met with Officer Connor. ECF No. 64-6 at 4; *see also* ECF No. 67-1 at 2, 5; ECF No. 67-2 at 2–3. In addition to turning over the electronic storage devices, Hannan provided specific information about the sexual nature of the images, identified specific children depicted in the photographs, and shared additional observations about Elliott's possession of child pornography based on her time spent in his house. ECF No. 64-6 at 4; *see also* ECF No. 67-2 at 2–3. The totality of the circumstances demonstrate a fair probability evidence of a crime would be found on the electronic storage devices. *Cf. Reinholz*, 245 F.3d at 776; *Stephen*, 984 F.3d at 631. As such, probable cause supports the search warrant for the electronic storage

devices.[4]

b.     Residence

Probable cause also supports the search warrant for Elliott's residence. *Cf. Seidel*, 677 F.3d at 337. The search warrant identified several types of evidence to be seized: evidence relating to crimes involving child pornography, firearms and firearm accessories, and controlled substances. ECF No. 64-7 at 2–3. The warrant application for Elliott's residence included an affidavit from Detective Bjurstrom. The affidavit relied on Officer Gruver's report of his interactions with Elliott on February 4, 2021, evidence obtained from Elliott's car, and Anderson's and Hannan's police reports. *Id.* at 7–10; *see also* ECF No. 67-3 at 2–3, 5; ECF No. 67-1 at 2, 5; ECF No. 67-2 at 2–3. The information in the affidavit provided probable cause to believe Elliott's residence contained evidence of a crime involving guns, controlled substances, and sexually explicit images of children. Elliott told law enforcement officers he may have a marijuana pipe in his car and law enforcement officers located a gun in Elliott's car. As explained above, Elliott's statements about the marijuana pipe were volunteered and therefore, lawfully obtained without *Miranda* warnings. *See supra* Part IV.A.2. Additionally, the gun located in Elliott's car was found after Elliott consented to the search. *See supra* Part IV.A.3. Because law enforcement officers legally obtained this evidence, it was properly included in the search warrant application for Elliott's residence. Finally, Anderson's and Hannan's information about electronic storage devices in Elliott's residence was verifiable and corroborated. And Hannan's information suggested additional electronic storage devices likely containing sexually explicit images of children were in Elliott's residence. *See* ECF No. 67-2 at 2–3. The totality of the circumstances

---

[4] Nothing about Elliott's interaction with law enforcement officers on February 4, 2021, has any bearing on the analysis of the validity of the search warrant for the electronic storage devices, as none of that information was included in the warrant application.

demonstrate a fair probability evidence of a crime would be found in Elliott's residence. *Cf.*
*Reinholz*, 245 F.3d at 776. As such, probable cause supports the search warrant for Elliott's
residence.

Even if the information about the gun and the marijuana pipe were excised from the search
warrant application for Elliott's residence, probable cause still supports the search warrant for
evidence of child pornography. *Cf. Montes-Medina*, 570 F.3d at 1059. As to evidence related to
child pornography, Hannan's statements indicated other electronic storage devices at Elliott's
residence contained images of child pornography; she only turned over some of his electronic
storage devices. ECF No. 67-2 at 2–3. Hannan detailed the location of the electronic storage
devices in Elliott's residence and her observations about the images of child pornography she
viewed on Elliott's phone, tablet, and computer. The totality of the circumstances demonstrated a
fair probability that evidence of a crime relating to child pornography would be found in Elliott's
residence. *Cf. Montes-Medina*, 570 F.3d at 1059. Therefore, even without information regarding
the gun and the marijuana pipe, independent information in the affidavit demonstrated a fair
probability evidence of a crime (child pornography) would be found in Elliott's residence. As such,
probable cause supports the search warrant for Elliott's residence for evidence of a crime related
to child pornography. *Cf. Seidel*, 677 F.3d at 337.

Even if the information about the gun and marijuana pipe found in Elliott's car were
unlawfully obtained and therefore the information about them required to be excised from the
search warrant application, suppression of the guns located in Elliott's house is not warranted.
No other information in the search warrant application related to evidence of guns or controlled
substances. *See* ECF No. 64-7 at 7–10. Excluding such information would remove probable
cause to support the search warrant of Elliott's residence for evidence of guns or controlled
substances. *Cf. Montes-Medina*, 570 F.3d at 1059. However, as explained above, probable cause

existed for the search warrant of Elliott's residence for evidence of child pornography. *See supra* Part IV.B.1.b. Law enforcement officers conducting the legal search of Elliott's residence for evidence of child pornography would have inevitably discovered the guns and controlled substances located there. *Cf. United States v. Baez*, 983 F.3d 1029, 1039 (8th Cir. 2020) ("[Evidence is admissible] if it inevitably would have been discovered by lawful means." (internal quotation marks and citation omitted)); *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997) (finding inevitable-discovery doctrine applies where the Government was actively pursuing a "substantial, alternative line of investigation at the time of the constitutional violation"). The illegality of these items would have been immediately apparent to law enforcement officers based on the nature of the items and Elliott's status as a felon. As such, suppression of the guns and controlled substances discovered in Elliott's residence would not be warranted under the inevitable-discovery doctrine, even if the information from Elliott's car was unlawfully included in the search warrant application.

### 2. *Franks* hearing

Elliott argues Detective Bjurstrom failed to include information regarding Anderson and Hannan's friendship, Anderson's and Hannan's criminal convictions, and Hannan's pending criminal charges. ECF No. 63-1 at 20–21. Elliott contends this information was "directly relevant" to assessing their credibility, and its omission misled the approving court. *Id.* at 21. As such, Elliott argues he is entitled to a *Franks* hearing.

The first showing under *Franks* requires the defendant to assert more than mere conclusions that the law enforcement officer deliberately or recklessly omitted a truthful statement in a warrant affidavit. *Franks*, 438 U.S. at 171; *accord United States v. Reivich*, 793 F.2d 957, 960–61 (8th Cir. 1986). "Allegations of negligence or innocent mistake will not suffice to demonstrate reckless or deliberate falsehood." *United States v. Mashek*, 606 F.3d 922, 928 (8th Cir. 2010). Second, the

defendant must show that if the omitted information is included in the warrant application, it "would be insufficient to establish probable cause." *United States v. Coleman*, 349 F.3d 1077, 1083 (8th Cir. 2003). "For probable cause to be shown, the warrant application and affidavit must describe circumstances showing that, based on practical experience and common sense, there is a fair probability that contraband or similar evidence will be found in the targeted place." *United States v. Nguyen*, 526 F.3d 1129, 1133 (8th Cir. 2008).

a.      Deliberate or reckless omission

The omitted information about Anderson and Hannan does not meet the substantial preliminary showing required for a *Franks* hearing. *Cf. Franks*, 438 U.S. at 171. As an initial matter, Detective Bjurstrom's affidavit indicated Anderson and Hannan were "friend[s]." ECF No. 64-6 at 4. Additionally, Elliott fails to point to evidence to support finding Detective Bjurstrom knew or had reason to believe Anderson and Hannah had previous criminal convictions or that Hannan had a pending criminal charge. *Cf. McIntyre*, 646 F.3d at 1114 (finding the defendant failed to meet the first *Franks* prong when no evidence demonstrated the law enforcement officer had reason to believe records used to support his search warrant affidavit were erroneous). Elliott asserts Detective Bjurstrom should have been aware of criminal information about Anderson and Hannan and therefore included such information. ECF No. 63-1 at 22. This allegation of negligent omission is insufficient to demonstrate Detective Bjurstrom deliberately or recklessly omitted information about Anderson's and Hannan's criminal histories. *Cf. Mashek*, 606 F.3d at 928; *United States v. Carpenter*, 422 F.3d 738, 745 (8th Cir. 2005) (holding a defendant "cannot meet the first *Franks* requirement because he relies entirely on his own accusations that the agent acted deliberately or recklessly"). Because Elliott fails to demonstrate Anderson's and Hannan's criminal history information was deliberately or recklessly omitted from the search warrant affidavit, he fails to meet the first requirement under *Franks*.

21

Any suggestion Detective Bjurstrom knew about Anderson's and Hannan's criminal histories based on Anderson's 911 call is unavailing. In the 911 call, Anderson alluded to her and Hannan's criminal histories by referencing their "parole officers." *See* ECF No. 64-1 at 2:02–05. The 911 call occurred after Anderson and Hannan had reported Elliott's electronic storage devices contained child pornography. *See* ECF No. 67-5 at 3 (providing timeline of events). And there is no indication in the record that Detective Bjurstrom, who was investigating the allegations of child pornography against Elliott, knew about Anderson's 911 call or its substance at the time he obtained the search warrant for the electronic storage devices. *See id.* (describing how law enforcement officers encountered Elliott when they were dispatched on February 4, 2021, but making no reference to Anderson or a 911 call). Detective Bjurstrom was not the 911 dispatcher at the time Anderson shared this information. *See generally* ECF No. 64-1; ECF No. 64-7 at 7–10. As such, there is no indication Detective Bjurstrom knew about Anderson's and Hannan's criminal histories and deliberately omitted this information from the search warrant application for the electronic storage devices.

b.      Search warrant supported by probable cause

Even if Elliott demonstrated Detective Bjurstrom deliberately or recklessly omitted information, Elliott fails to demonstrate the second *Franks* prong as to each warrant. *Cf. Franks*, 438 U.S. at 171. The inclusion of omitted impeaching information about Anderson's and Hannan's criminal histories does not render the search warrant for the electronic storage devices insufficient to demonstrate probable cause. *Cf. Coleman*, 349 F.3d at 1083. Elliott does not demonstrate Anderson's and Hannan's criminal convictions were the type to effectively render their statements insufficient to support the warrants. *Cf., e.g., United States v. Hall*, 113 F.3d 157, 159 (8th Cir. 1997) (finding failure to disclose informant's conviction for making a false police report rendered informant's testimony about the defendant insufficient to support issuance of search warrant for

the defendant's trailer). Inclusion of the impeaching information does not establish Anderson's and Hannan's statements to police about their observations of sexually explicit images of children on the electronic storage devices were unreliable. *See United States v. Gater*, 868 F.3d 657, 660 (8th Cir. 2017) ("As with any witness, drug use or compensation might be used to impeach credibility, but these factors do not necessarily establish that the source's information is unreliable."). Hannan's specific and detailed information about the content of the electronic storage devices, coupled with Anderson's observations corroborating Hannan's information indicates their statements were reliable. Their willingness to meet with law enforcement officers is additional indicia of their reliability. *See supra* Part IV.A.1.

Inclusion of the impeaching information about Anderson's and Hannan's criminal histories similarly does not render the search warrant for Elliott's residence insufficient to demonstrate probable cause. *Cf. Gater*, 868 F.3d at 660. For the reasons explained above, inclusion of Hannan's criminal history does not render her statements to law enforcement officers unreliable. Additionally, Detective Bjurstrom verified Hannan's and Anderson's observations of sexually explicit images of children on the electronic storage devices prior to submitting the search warrant application for Elliott's residence. *See* ECF No. 64-7 at 7–10. Because he corroborated some of their statements, it was reasonable to believe Hannan's statement that additional electronic storage devices at Elliott's residence contained evidence of a crime. *See United States v. Scott*, 610 F.3d 1009, 1015 (8th Cir. 2010) ("[P]robable cause is not defeated by a failure to inform the magistrate judge of an informant's criminal history if the informant's information is at least partly corroborated." (internal quotation marks and citation omitted)). Elliott fails to show the search warrant would have lacked probable cause if the omitted information about Andersons and Hannan's criminal histories had been included in the search warrant application. As such, he fails to demonstrate the second prong of *Franks*.

Because Elliott fails to establish Detective Bjurstrom deliberately or recklessly omitted information from the search warrant affidavits or inclusion of the omitted information renders the search warrant applications insufficient to support probable cause, he fails to establish that a *Franks* hearing is warranted on either search warrant.

## V.    CONCLUSION

Reliable information obtained from Anderson provided law enforcement officers reasonable suspicion to conduct a *Terry* stop of Elliott. Law enforcement officers did not exceed the scope of a valid *Terry* stop. Because law enforcement officers did not interrogate Elliott, they did not violate his Fifth Amendment rights. Additionally, Elliott consented to the search of his car and his voluntary statements provided additional probable cause to support the search. Search warrants for Elliott's residence and electronic storage devices were supported by probable cause. Elliott's claim that the affidavits supporting the search warrants for the electronic storage devices and his residence omitted information does not meet the standard set forth in *Franks*. For the foregoing reasons, admission at trial of the evidence and statements obtained on February 4, 2021, and evidence located on the electronic storage devices and in Elliott's residence does not violate Elliott's Fourth or Fifth Amendment rights.

**IT IS ORDERED** that Defendant Gary Dale Elliott Sr.'s Motion to Suppress, ECF No. 63, is **DENIED**.

**IT IS SO ORDERED.**

Dated this 10th day of January, 2022.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE