IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Crim. No. 4:21-cr-038 |
| | ) | |
| v. | ) | GOVERNMENT'S |
| | ) | SENTENCING |
| GARY DALE ELLIOTT, SR., | ) | MEMORANDUM |
| | ) | |
| Defendant. | ) | |

## Table of Contents

INTRODUCTION ................................................................................................. 1

GUIDELINES CALCULATION........................................................................... 2

RESTITUTION ...................................................................................................... 7

THE § 3553(a) FACTORS SUPPORT A SENTENCE OF 720 MONTHS................... 7

CONCLUSION..................................................................................................... 13

**INTRODUCTION**

Defendant Gary Elliott, Sr. is an unmitigated danger to society. He spent over twenty-five years in prison after his infant son suffered skull and rib fractures and ultimately died. After being released from decades in prison, Elliott quickly amassed a large collection of child pornography, much of which depicts young girls being raped by adult men. In 2018, Elliott produced child pornography by using a hidden camera in his bathroom to film the nude minor children of his then-girlfriend. And when a later girlfriend discovered Elliott's child pornography collection, Elliott threatened to kill her and hunted her down with a loaded gun. The Court should sentence Elliott to

1

720 months in prison to reflect the seriousness of the offense, provide just punishment, and most importantly protect the public.

## GUIDELINES CALCULATION

There are no outstanding factual objections to the PSR. There are, however, several guidelines issues the Court will need to resolve at sentencing. The government agrees with the guidelines calculation set forth in the PSR, which results in a total offense level 43 and a guidelines range of life, capped at the statutory maximum of 720 months.[1] PSR ¶¶ 141-142.

Elliott makes several objections to the guidelines calculation in the PSR. *See* ECF No. 97. First, he objects to a two-level enhancement for producing child pornography with a minor who was in his "custody, care, or supervisory control." USSG §2G2.1(b)(5). Second, he objects to a five-level enhancement for engaging in a "pattern of activity involving the sexual abuse or exploitation of a minor." USSG §2G2.2(b)(5). And third, he objects to five-level Chapter Four enhancement for being a repeat and dangerous sex offender against minors. *See* USSG §4B1.5(b).[2]

---

[1] The government withdraws its objection that the conduct involving Minor Victim Two and Minor Victim Three should be considered relevant conduct, creating pseudo counts for Counts 2 and 3 of the Superseding Indictment. *See* ECF No. 96 at ¶ 1. Thus, the only outstanding guidelines objections are Elliott's.

[2] Elliott also objects to a four-level enhancement for possessing a firearm in connection with another felony offense. *See* PSR ¶ 75; USSG § 2K2.1(b)(6)(B); ECF No. 97 at ¶ 9. But the firearm count, with or without this enhancement, has no impact on the ultimate guidelines range. *See* PSR ¶¶ 74-80. In any event, this enhancement was properly applied because Elliott possessed the gun in connection with the felony offenses of stalking with a dangerous weapon and going armed with intent, both of which are class D felonies under Iowa law. *See* Iowa Code §§ 708.8, 708.11(3)(b)(2).

I. **The PSR correctly applies a two-level enhancement under §2G2.1(b)(5).**

Section 2G2.1(b)(5) provides for a two-level enhancement if a defendant produces child pornography with a minor who was in the defendant's "custody, care, or supervisory control." This enhancement "is intended to have broad application and includes offenses involving a minor entrusted to the defendant, whether temporarily or permanently." USSG §2G2.1, comment. (n.5(A)). The enhancement covers "temporary caretakers," including teachers, day care providers, and baby-sitters. *Id*. The Court should look to the "actual relationship" between the defendant and minor, rather than simply the "legal status" of their relationship. *Id*.

In this case, Elliott produced child pornography by filming Minor Victim One in Elliott's bathroom. PSR ¶ 41-42. Minor Victim One, who was ten years old at the time, was the daughter of Elliott's then-girlfriend. PSR ¶¶ 41-42. Elliott's girlfriend and her three minor children, including Minor Victim One, lived with Elliott for several months in 2018, including when Elliott produced child pornography depicting Minor Victim One. PSR ¶¶ 41-42, 88-94. On at least one occasion, Minor Victim One (age ten) and Minor Victim Two (age three) were left alone with Elliott at his home while their mother was working and their older sister was not home. PSR ¶ 45.

These facts fall within the "broad application" of section 2G2.1(b)(5). Elliott was at least a "temporary caretaker" of Minor Victim One, and the Eighth Circuit has affirmed the enhancement on analogous facts. *See United States v. Beasley*, 688 F.3d 523, 535 (8th Cir. 2012) (applying enhancement to video game store owner who "was the primary, and maybe the only, adult present"); *United States v. Street*, 531 F.3d

703, 711 (8th Cir. 2008) (affirming enhancement where defendant and victim's mother "lived together as husband and wife"). Accordingly, the Court should apply this two-level enhancement.

### II. The PSR correctly applies an enhancement for a "pattern of activity" under §2G2.2(b)(5).

Section 2G2.2(b)(5) calls for a five-level enhancement where the defendant "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor."[3] The guidelines define such a pattern to be "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor." USSG §2G2.2, comment. (n.1). Sexual abuse or exploitation is defined to expressly include the production of child pornography in violation of 18 U.S.C. § 2251(a). *Id.* Importantly, a pattern includes any two or more instances of sexual abuse or exploitation, regardless of whether they (1) occurred during the course of the offense, (2) involved the same minor, or (3) resulted in a conviction. *Id.*

The undisputed facts establish a pattern of sexual abuse or exploitation. Elliott admitted in his plea agreement that he produced child pornography involving three separate victims on three separate occasions. ECF No. 73 at ¶ 7(a)-(c). The facts of these incidents are more fully described in paragraphs 41-42 and 88 through 94 of the PSR and each constitutes the production of child pornography under 18 U.S.C. § 2251(a). Conduct in violation of section 2251(a) is within the guideline definition "sexual abuse or exploitation of a minor," so Elliott is subject to the five-level

---

[3] The basis for Elliott's objection to this enhancement is not clear, because he simply states that "he does not believe it is applicable to him." ECF No. 97 at ¶ 6.

enhancement. *See United States v. Carey*, 848 F. App'x 221, 222 (8th Cir. 2021) (per curiam) (affirming §2G2.2(b)(5) enhancement where defendant "twice produced child pornography as that offense is defined in 18 U.S.C. § 2251(a)").

### III. The PSR correctly applies the enhancement for a repeat and dangerous sex offender under §4B1.5(b).

Section 4B1.5(b) provides for a five-level enhancement if the offense of conviction is a "covered sex crime" and the defendant "engaged in a pattern of activity involving prohibited sexual conduct."[4] "Covered sex crime" is defined to include chapter 110 offenses against a minor, excluding the mere trafficking, receipt, or possession of child pornography. USSG §4B1.5, comment. (n.2). This definition encompasses Elliott's conviction for production of child pornography under 18 U.S.C. § 2251. *Id.*; *see United States v. Morgan*, 842 F.3d 1070, 1077 (8th Cir. 2016) (holding attempted production of child pornography is a covered sex crime).

The guidelines define "prohibited sexual conduct" to expressly include the production of child pornography. USSG §4B1.5, comment. (n.4)(A). And a "pattern of activity" exists where, "on at least two separation occasions, the defendant engaged in prohibited sexual conduct with a minor." *Id.* at comment. (n.4(B)(i)). An occasion of prohibited sexual conduct counts regardless of whether it (1) occurred during the course of the instant offense or (2) resulted in a conviction. *Id.* at comment. (n.4(B)(ii)).

---

[4] Aside from a specific double counting concern, which is addressed below, the basis for Elliott's objection to this enhancement is not clear. Elliott simply states that "he does not believe it is applicable to him." ECF No. 97 at ¶ 13.

Elliott's offense of conviction—production of child pornography—is a "covered sex crime." And by producing child pornography with three separate minors on three separate occasions, Elliott engaged in a pattern of activity involving prohibited sexual conduct. Elliott admitted to the requisite facts in his plea agreement. ECF No. 73 at ¶ 7(a)-(c). And those facts are "sufficient to make [Elliott] a repeat and dangerous sex offender triggering §4B1.5(b)(1)." *United States v. Bevins*, 848 F.3d 835, 839 (8th Cir. 2017) (affirming enhancement where defendant "created at least two videos depicting child pornography on separate dates").

Elliott contends that application of both §4B1.5(b) and §2G2.2(b)(5) "results in an impermissible double enhancement for the same conduct." ECF No. 97 at ¶ 13. Numerous courts have rejected this argument. *See United States v. Rogers*, 989 F.3d 1255, 1263 (11th Cir. 2021); *United States v. Seibert*, 971 F.3d 396, 401 (3d Cir. 2020); *United States v. Dowell*, 771 F.3d 162, 170-71 (4th Cir. 2014); *United States v. Bastian*, 650 F. Supp. 2d 849, 870 (N.D. Iowa 2009).

As the Fourth Circuit explained, the guidelines expressly contemplate the cumulative application of these enhancements, because §4B1.5(b)(1) "states that the five-level enhancement is to be added to the offense levels determined under Chapters Two and Three." *Dowell*, 771 F.3d at 170. Additionally, although §2G2.2(b)(5) and §4B1.5(b)(1) cover similar conduct, they "serve distinctly different goals." *Id.* at 170-71. Section 4B1.5(b)(1) "aims not merely to punish a defendant for the specific characteristics of the offenses of conviction, as does §2G2.2(b)(5), but to allow a district court to impose an enhanced period of incarceration because the defendant

6

presents a continuing danger to the public." *Id.* at 171; *see Bastian*, 650 F. Supp. 2d at 870 (explaining that §2G2.2(b)(5) is a specific offense characteristic while "§4B1.5 was created to address recidivism concerns"). Thus, application of both enhancements does not constitute impermissible double counting.

## RESTITUTION

Restitution is mandatory in this case. 18 U.S.C. § 2259(a), (b)(4). In the plea agreement, Elliott agreed the Court should order restitution for the full amount of each victim's losses, which is no less than $3,000 per victim. ECF No. 73 at ¶ 23.

Restitution requests have been made by victims in nine series from which Elliott possessed images. PSR ¶ 51. The court is required to order restitution "in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000." 18 U.S.C. § 2259(b)(2)(B). Consistent with the statute and the parties' plea agreement, the government asks that the Court order Elliott to pay at least $3,000 in restitution to each of the victims identified in paragraph 51 of the PSR.

## THE § 3553(a) FACTORS SUPPORT A SENTENCE OF 720 MONTHS

The appropriate sentence to be imposed by the Court should be sufficient but not greater than necessary to meet relevant sentencing objectives, which include:

1. The nature and circumstances of the offense and history and characteristics of the defendant;
2. the need for the sentence imposed –
   A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   B. to afford adequate deterrence to criminal conduct;
   C. to protect the public from further crimes of the defendant; and

         D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3. the kinds of sentences available;
4. the guideline sentencing range;
5. any pertinent policy statement;
6. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
7. the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a). The § 3553(a) factors support a sentence of 720 months in prison.

Elliott's conduct demonstrates the significant danger he poses to the public. In 1988, Elliott was sentenced to life in prison after he was convicted of injury to a child in Texas. PSR ¶ 97. The facts of that crime are abhorrent. Elliott was directed by child abuse officials to bring his infant son in for x-rays. *Id.* Elliott failed to do so, and several days later Elliott's son was found not breathing with a fractured skull and broken ribs. *Id.* The broken bones were determined to be about ten days old. *Id.*

Elliott was imprisoned for over twenty-seven years for that offense. *Id.* He performed poorly in prison. He was disciplined for a host of transgressions, including possessing contraband, controlled substances, and pornography. *Id.* Elliott was ultimately paroled in 2015. *Id.* He returned to Iowa and lived with his elderly mother. PSR ¶¶ 20, 110.

After Elliott was released from prison, he soon began amassing a large collection of child pornography.[5] *See* PSR ¶¶ 22-40. Elliott stored his collection on a variety of devices, including a laptop computer, a hard drive, multiple thumb drives, and his Google account. *See id.* The collection focused primarily on young girls and included photos and videos of adult men engaging in anal and vaginal penetration of prepubescent girls. PSR ¶¶ 25-27. Many of the videos were created by Elliott as he viewed the child pornography on another device. PSR ¶ 26. In at least one of those videos, Elliott can be heard masturbating as he watched child pornography. *Id.*

In addition to his collection of child pornography, Elliott possessed many other videos that are, bizarrely, even more disturbing than the child pornography itself. In these videos, Elliott filmed a computer screen that showed young girls doing innocuous things—playing with dolls, stretching, dancing, and the like. *See* PSR ¶¶ 29, 31, 33, 35.

While these videos themselves are innocuous, Elliott's commentary while watching them is anything but. In one video, for example, Elliott watched a clothed girl—about five years old—stretching on the floor. PSR ¶ 29. While watching the video, Elliott declared that the girl was "five years old" and "ready to f*** like a mother f*****." *Id.* Elliott then suggested that an adult male in the video, perhaps the girl's father, was likely sexually abusing the girl. *Id.* This video demonstrates that Elliott views children, including girls as young as five, as sexual objects. Indeed, it

---

[5] One of Elliott's thumb drives contained child pornography files with created dates in October 2015, indicating that Elliott began collecting child pornography within months of being paroled from prison in August 2015. PSR ¶¶ 34, 97.

9

demonstrates Elliott's depraved belief that a five-year-old girl is "ready"—and perhaps even willing—to be sexually abused.

In another appalling video, Elliott watched a video of a young African American girl playing with dolls. PSR ¶ 31. As he recorded the video playing on a screen, Elliott repeatedly zoomed in on the girl's pubic area. *Id.* As he did so, Elliott repeatedly stated, "show me the pussy." *Id.* Most disturbingly, Elliott then stated his belief that the girl's vagina looked "just like" that of the minor daughter of Elliott's then-girlfriend, who lived with Elliott for several months in 2018. PSR ¶¶ 31 & n.3, 41-42. As discussed below, investigators later determined that Elliott produced child pornography of that minor daughter and her sisters by filming them with a hidden camera in his bathroom. PSR ¶¶ 41-42.

In yet another sickening video, Elliott filmed himself masturbating while holding a wallet sized school photo of a girl approximately five years old. PSR ¶ 36. During the video, Elliott rubbed his penis on the girl's photograph. *Id.* This evidence demonstrates Elliott's vile sexual interest in children.

That interest is confirmed by what Elliott did when he actually had young girls within his grasp. In 2018, Elliott's then-girlfriend and her three minor daughters lived with Elliott for several months. PSR ¶¶ 41, 88. During that time, Elliott concealed a hidden camera in his bathroom to capture videos of the children—ages three, ten, and fourteen—while they were nude and using the shower. PSR ¶¶ 42, 89, 92. These videos were later found on devices on which Elliott stored other child pornography, and Elliott created additional copies of the videos in which he zoomed

10

in on certain aspects, typically including the victims' pubic and genital areas. PSR ¶¶ 42-43, 89, 93. Investigators also found a video of the youngest child, Minor Victim Two, using the toilet. PSR ¶ 90. While the child's genitals were not exposed in the video, Elliott later recorded himself watching the video, and his exposed penis is visible in the background. *Id.*

As part of this investigation, Minor Victim One was forensically interviewed. PSR ¶ 44. During that interview, Minor Victim One described an incident in which she and her younger sister were alone with Elliott at his home. PSR ¶ 45. Minor Victim One stated she came out of the bathroom to see Elliott rubbing the buttocks and thighs of Minor Victim Two, who was three years old at the time. *Id.* Elliott abruptly stopped what he was doing when he noticed Minor Victim One. *Id.* Tragically, Minor Victim One became emotional during her forensic interview, expressing concern that Elliott may have further abused her little sister after Minor Victim One went outside. *Id.*

After Elliott's arrest, investigators obtained a search warrant for his Google account. PSR ¶ 39. The account contained additional child pornography, again including prepubescent females engaging in sex acts with adult men. *Id.* The account contained other disturbing material, most notably "voyeur" type photos of children walking outside. PSR ¶ 40. These photos, which appear to have been taken from inside a vehicle, are particularly disturbing considering Elliott's vast child pornography collection, his production of child pornography, and his obvious sexual interest in children.

11

Elliott's conduct came to light in early 2021 when Elliott's then-girlfriend, K.H., discovered his child pornography. PSR ¶ 13. K.H. contacted the police and turned over numerous flash drives containing child pornography. PSR ¶ 14. That same day, K.H. and Elliott exchanged numerous text messages, in which K.H. told Elliott that she was going to provide information to police about him being a "pedophile." PSR ¶ 15.

In response, Elliott hurled vulgar insults at K.H. and threatened to hunt her down at various locations. PSR ¶ 15. Elliott threatened K.H., telling her she "better hope I don't catch you" and that she "better get [to] them cops before I can get to you b**** that's all I can tell you." *Id.* Around the time Elliott sent these messages, he contacted another man in his efforts to locate K.H. PSR ¶ 16. Elliott told the man he was "going to do that bitch" and "make her wish she had never been born." *Id.*

After Elliott sent the above messages, K.H.'s friend contacted the police to report Elliott was outside of an apartment building with a gun. PSR ¶ 17. The friend reported that K.H. recently left the building for her safety, and that Elliott had threatened to kill them. *Id.* Officers responded to the apartment and found Elliott sitting his car with a loaded revolver in the backseat. PSR ¶ 18. The subsequent investigation revealed the child pornography offenses discussed above.

It's hard to overstate the danger Elliott presents to the public. He is a sexual deviant who believes kindergarten-aged children are "ready" to be sexually abused. He's someone who enjoys watching prepubescent girls be vaginally and anally raped by adult men. He's someone who masturbates to a child's school photo. He's someone

who is willing to abuse young girls by secretly filming them for his own sexual gratification. And he's someone who is willing to arm himself with a gun and threaten people to keep it all a secret.

In 1988, Elliott was sentenced to life in prison. He spent a quarter century behind bars. And in the last few years, he's shown that's where he belongs.

## CONCLUSION

The Court should sentence Elliott to 720 months in prison.

Respectfully Submitted,

Richard D. Westphal
United States Attorney

By: */s/ Ryan W. Leemkuil*
Ryan W. Leemkuil
Assistant United States Attorney
United States Courthouse Annex
110 East Court Avenue, Suite 286
Des Moines, Iowa 50309-2053
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: ryan.leemkuil@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2022, I electronically filed
the foregoing with the Clerk of Court using the
CM ECF system. I hereby certify that a copy of this
document was served on the parties or attorneys of record
and the United States Probation Officer by:

\_\_\_ U.S. Mail\_\_\_\_Fax\_\_\_\_\_Hand Delivery

 X  ECF/Electronic filing\_\_\_Other means (email)

UNITED STATES ATTORNEY
By:   */s/ Ryan Leemkuil,* AUSA